# Drysdale's Appeal.

Several persons who held liens against the property agreed to purchase at sheriff's sale the real estate bound, which belonged to a corporation who held it for church and school purposes. It was purchased by one of them and conveyed to him by the sheriff in fee, and he executed a declaration in trust that he would hold the same to sell and pay to himself and his associates certain specified amounts, and any remainder of the proceeds of sale to be paid to the use of the ecclesiastical corporation: *Held,* that the said trustee had such an interest in the said estate as could be bound by a judgment; and that on a sale of the same by a trustee appointed by the Common Pleas, in the room of the said purchaser, the share of the proceeds formerly payable to the said original trustee was to be paid to his judgment creditor, in preference to one to whom he had transferred the same by an assignment subsequent to the judgment.

APPEAL from the decree of the Court of Common Pleas, Philadelphia, upon the account of Thomas Earp, trustee, directing distribution of certain funds. An auditor was appointed to audit, adjust, and settle the accounts of Thomas Earp, trustee of the fund arising from a sale of certain real estate, and to report distribution of the same.

On June 23d, 1830, Thomas Cadwalader et al., being the then owner in fee *of the lot in question,* granted and conveyed it to David H. Mason et al., in trust, to permit it to be used and occupied as a church and school-house, under the control of the Presbyterian Church; the deed recorded. On the 14th February, 1834, the congregation worshipping in the church erected on the lot of ground, became incorporated under the name and title of the Fairmount Presbyterian Church, in Penn township, Philadelphia county.

In the process of erecting a building on the lot, several liens, it appears, had been created; and ultimately, several friends of the enterprise, comprising Ezra Stiles Ely, John Hocker, Thomas Fleming, Thomas Elmes, George W. McClellan, and Robert Earp, agreed *to purchase these liens ;* to sell out the property under them; *to buy it at sheriff's sale,* &c.

[Drysdale's Appeal.]

Under this agreement the liens were purchased, and in April, 1837, the property was bought at sheriff's sale, in the name of Dr. Ely, and was paid for by the several liens, which were held in Dr. Ely's name, but which really were owned by Dr. Ely and the gentlemen with whom he was associated, in certain proportions.

On 29th April, 1837, a deed for the same was acknowledged by the sheriff to Dr. Ely in fee simple; and on the same day, Dr. Ely executed a declaration of trust, which was recorded: in it, it was stated that certain persons, subsequently to the execution of the deed by Cadwalader and others, proceeded to erect a school-house and church edifice thereon, but were unable to discharge the debts incurred by the erection of said buildings. That to save the lot and buildings from being sold, in the year 1835, under the lien laws, he, and others through his agency, purchased and procured a transfer of the claims. That nothing having been done by the congregation to liquidate the debts, it has been deemed expedient by those who purchased the lien claims, to sell all the right and title of Thomas Cadwalader and others, and of all other persons and corporate bodies and trustees to any and all of the above described lot of ground, and the buildings thereon erected. That the lot and buildings were sold by the sheriff, and purchased by the said Ely. That having purchased the said lot, and buildings and appurtenances, he now executes a declaration of trust, in which it was stated, in substance, that he will hold the same in trust, for the purpose of selling the same at such time and in such manner as he, the said Ely, shall think best; and, out of the purchase-money, pay the following persons certain sums of money, viz. to himself, his heirs or assigns, $1150, with interest from February 9th 1835; to John Hocker, &c. ;—and further declaring that, "should the sale of the property above described not amount to a sufficient sum of money to pay each of the above-named persons their full dues, then each of them and their respective heirs and assigns shall be paid a proportionate dividend on the full amount of his dues. And should any money remain in the hands of the said Ely, or his executors or administrators, or assigns of this trust, after paying each of the above described debts, together with all the expenses of this trust, then all such overplus or remainder shall be paid to the proper organ of the Fairmount Presbyterian Church, in Penn township, Philadelphia county, for the use and benefit of said incorporated ecclesiastical body or congregation.

"Finally, it is hereby provided and declared as conditions of this trust, that said Ezra Stiles Ely, or his executors, administrators, or assignees of this trust, shall sell the above-described lot of ground and houses thereon erected, at public auction, to accomplish the objects of this trust above described, whenever required by so many of the above-named creditors, to wit, Messrs. John Hocker, Thomas Fleming, Thomas Elmes, George W. McClelland, and Robert Earp,

[Drysdale's Appeal.]

and their heirs or assigns, as shall at the time hold or possess a right to the major part of whole debt due agreeably to this trust. And until such sale as has been above described shall have been effected, it shall be the right and privilege of any three of the above-named persons, namely, Hocker, Fleming, Elmes, McClelland, and Earp, to rent, lease, occupy, or use said building in any such manner as they shall deem best, provided they do nothing 'inconsistent with the terms of this deed of trust."

The auditor reported that, on December 17th, 1842, William Drysdale, one of the two parties claiming the fund in dispute before the auditor, obtained a judgment against Ely, in the Supreme Court of Pennsylvania, and on October 13th, 1845, sold all Ely's right, title, and interest in the premises, and a deed therefor was acknowledged to Barrington, as the agent of Drysdale, who, on October 23, 1845, executed a deed to Drysdale for the same in fee.

On March 6th, 1843, before the sheriff's sale to Barrington, but *after the entry of Drysdale's judgment,* a transfer was executed by Dr. Ely of all his interest in the property to Mary Brady. Subsequently to this transfer, the Court of Common Pleas dismissed Ely from the trust, and refusing to appoint Drysdale as his successor, though his claim to the office was brought to their notice, nominated Thomas Earp as trustee in Ely's place.

The property was sold by Earp, under the provisions of the deed of trust, to the controllers of public schools, to whom a deed of confirmation was afterwards given by Drysdale. The question discussed before the auditor was, whether Mrs. Brady, the assignee of Ely's interest in the premises, or Drysdale, the sheriff's vendee of the same, is entitled to Ely's share in the proceeds of the sale by Earp.

*Ingraham,* on behalf of Drysdale, argued that Dr. Ely, at the time of the entering against him of Drysdale's judgment, owned a fee simple, and that he also possessed a beneficial interest which his fee simple protected, so that he had an estate in the land capable of being bound by a judgment: Karkhuff *v.* Anderson, 3 *Binney* 5; Ely *v.* Beaumont, 5 *Ser. & R.* 124; Vandevender's Case, 2 *P. A. Browne* 304; McMullen *v.* Wenner, 16 *Ser. & R.* 18; Bayard *v.* Lent, 8 *Watts* 423; Myer *v.* Myer, 8 *Watts* 430; Alexander *v.* McMurray, 8 *Watts* 504; Krause's Appeal, 2 *Whar.* 398; Morrow *v.* Brenizer, 2 *Rawle* 188.

*Fallon* and *Raybold,* for Mrs. Brady, insisted that, on the assumption that Drysdale took a fee by the sheriff's sale, that fee was still in him, and he could have no claim upon the proceeds of the sale of the same property by a stranger. The refusal of the Court of Common Pleas, however, they maintained, to appoint Drysdale trustee in the place of Ely, dismissed, and the appointment of Earp instead, showed the opinion of that court to be, that the legal estate did not pass to Drysdale by the sheriff's sale.

[*Drysdale's Appeal.*]

Independently of these points, the following positions were taken:—

1. That the title of Ely, as trustee, could not be seized and sold under a judgment against him individually, nor could there be a coalition in the vendee of the legal estate and the equitable interest reserved in the deed of trust: Allison *v.* Wilson, 13 *Ser. & R.* 333.

2. That Ely had no estate in the property except as trustee for the purposes of sale: Vaux *v.* Parke, 7 *W. & Ser.* 25; Fisher *v.* Taylor, 2 *Rawle* 33; Stuck *v.* Mackey, 4 *W. & Ser.* 196; Capeman *v.* Gallant, 1 *Pierre Wms.* 314; Craig *v.* Lesly, 3 *Wheaton* 563; Bracklin *v.* Mullin, 4 *W. & Ser.* 102.

3. That Ely's interest in the share of the money to be raised by the sale of the premises was not such as could be bound by Drysdale's judgment.

4. That the transfer to Mrs. Brady was good and valid to pass the interest of Ely in the money to be raised by the sale of the property, and under it she is entitled thereto.

The auditor decided that the action of the Court of Common Pleas refusing to appoint Drysdale as trustee was conclusive; that the fee never vested in Drysdale; and that, if it were otherwise, Drysdale had no claim to the fund produced by the sale by Earp. He reported that Drysdale had no claim to the fund; and as the interest of Dr. Ely was transferred to Mary Brady on March 6th, 1843, he reported as due to her the balance of the fund, after deducting expenses of audit.

On the part of Drysdale, it was excepted that the auditor erred in reporting that Drysdale had no claim to the fund, and in reporting the balance to Mary Brady.

The case was argued by *Ingraham*, for Drysdale.—He contended that Dr. Ely had such an interest in the land as was capable of being bound by a judgment—that it was not merely a trust interest.

*C. Fallon* and *Raybold*, contra, contended that Dr. Ely had no *estate* in the land; that he had but a trust to sell and pay himself and others; that there was an agreement prior to the declaration of trust, under which agreement the liens were purchased.

The opinion of the court was delivered April 7, 1851, by

GIBSON, C. J.—The lot in question was purchased by the congregation, and the title to it was vested in some of the members in trust, to permit it to be used as a church and school-house. The church was erected, but it was encumbered with mechanics' liens; and to relieve the congregation from the immediate pressure of them, Dr. Ely agreed with five others to purchase them, and give the congregation time to extinguish them. They were transferred to

him, and paid for with money advanced by the associates in unequal proportions. After reasonable indulgence, they found that nothing had been, or probably would be done by the congregation; and they agreed to bring the property to the hammer, vest the title in Dr. Ely in trust to sell it, pay their advances out of the proceeds, and give the surplus, if any, to the congregation. It was sold by the sheriff and conveyed to Dr. Ely, who executed a declaration of trust, stating the terms of the agreement; and the question is, whether he acquired, by the sheriff's deed, an interest which could be bound by a judgment.

Unlike the beneficiaries in Allison *v.* Wilson, and Morrow *v.* Brenizer, who had only an interest in the execution of a power, he had an estate in the soil. He had the legal title, which always may be bound to the extent of the beneficial interest covered by it. It was divested by the sale; and as it certainly rested somewhere, it passed by the sheriff's conveyance to the purchaser. The auditor erred in reporting that it was purchased by Dr. Ely for the congregation on the original trusts; the declaration of trust shows it was not. It was purchased to sell it again to any one who would pay for it; and it had been found that the congregation could not. Dr. Ely was a trustee of the title, not for the congregation beyond its interest in the possibility of a surplus, but for his associates and himself. He was a trustee with a beneficial interest of his own; and it is immaterial whether his equitable estate merged in the legal estate or not. As he had a successor, who could execute the trust only by selling the title entire, it may be assumed that it did not; but his equitable estate in the soil remained in him; and it is not to be disputed that such an estate may be bound by judgment.

We are, therefore, of opinion, and it is so ordered, that the decree of the Common Pleas be reversed so far as regards the appellant's judgment, which is decreed to be paid out of the fund in court in its order.